1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES WILLIAM SORIA,**<br><br>Petitioner,<br><br>**v.**<br><br>**JAMES A. YATES, Warden,**<br><br>Respondent. | **Case No. 1:10-cv-01137 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Leslie W. Westmoreland of the office of the California Attorney General.

**I.      PROCEDURAL BACKGROUND**

    Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on May 25, 2007, of one count of sodomy upon a child under fourteen years of age with a ten-year age difference, two counts of continuous sexual abuse of a child under the age of fourteen years, five counts of lewd and lascivious acts upon a child under the age of fourteen years with a multiple-victims enhancement allegation, and one misdemeanor count of annoying and molesting a child. On July 9,

1   2007, Petitioner was sentenced to forty-five years to life in state prison, consecutive to a

2   determinate term of eighteen years. (Clerk's Tr. at 384-387.)

3        Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

4   District, which was denied on January 16, 2009. (Lodged Docs. 1-4.) On January 17,

5   2009, Petitioner filed a petition for review with the California Supreme Court. (Lodged

6   Doc. 5.) The petition was summarily denied on March 25, 2009. (Lodged Doc. 6.)

7        Petitioner filed his federal habeas petition on June 23, 2010. (Pet., ECF No. 1.)

8   The petition raised three grounds for relief: 1) The trial court violated Petitioner's due

9   process rights by admitting irrelevant and unduly prejudicial evidence; 2) The trial court

10  erred in failing to instruct the jury concerning uncharged conduct or, alternatively,

11  counsel was ineffective for failing to request the instruction, in violation of the Sixth and

12  Fourteenth Amendments; and 3) The trial court violated Petitioner's due process rights

13  by permitting the prosecution to cross-examine him concerning irrelevant collateral

14  misconduct. (Id.)

15       On September 23, 2010, Petitioner filed a first amended petition. (Am. Pet., ECF

16  No. 14.) The amended petition argued the same three grounds for relief raised in the

17  original petition, along with two new claims: 4) The trial court erred in permitting rebuttal

18  witnesses testify in relation to the collateral misconduct; and 5) The cumulative effect of

19  the evidentiary and instructional errors requires reversal. (Id.)

20       Respondent filed an answer to the petition on January 13, 2011, and Petitioner

21  filed a traverse on February 14, 2011. (Answer & Traverse, ECF Nos. 22, 24.) The

22  matter stands ready for adjudication.

23  **II.   STATEMENT OF THE FACTS**[1]

24       Defendant was charged by amended information with sexually
25  molesting a series of prepubescent and early-teen-aged boys. One victim,
     J.P., testified that over a period of about two years defendant engaged in
26   a series of acts on the victim, including fondling, masturbation, oral

27  [1]The Fifth District Court of Appeal's summary of the facts in its January 16, 2009 opinion is presumed
    correct. 28 U.S.C. § 2254(e)(1).

28

copulation, and digital penetration, while the victim pretended to sleep. These acts were the basis for counts 1 (continuous sexual abuse in violation of Pen. Code, § 288.5) and counts 2 and 3 (lewd act upon a child in violation of Pen. Code, § 288, subdivision (a)).

A second victim, K.G., testified that defendant touched and rubbed the victim's penis on one occasion. This instance was the basis for count 4, violation of Penal Code section 288, subdivision (a).

A third victim, E.W., testified that defendant fondled the victim's penis on numerous occasions, attempted to sodomize the victim, and caused the victim to sodomize defendant multiple times. These acts were the basis for counts 5 and 6, violations of Penal Code section 288, subdivision (a), and count 7, violation of Penal Code section 288.5.

A fourth victim, N.E., testified that defendant touched him over his clothing on two occasions, the basis for counts 8 and 9. Count 8 charged a violation of Penal Code section 288, subdivision (a) and count 9 charged defendant had annoyed and molested a child, a misdemeanor violation of Penal Code section 647.6.

Additional facts concerning the trial will be stated as we discuss the issues presented.

People v. Soria, 2009 Cal. App. Unpub. LEXIS 377, 2-3 (Cal. App., Jan. 16, 2009).

## II.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.   Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

1    Court further stresses that "an *unreasonable* application of federal law is different from

2    an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

3    U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks

4    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

5    correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

6    U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

7    have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

8    Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

9    Federal law for a state court to decline to apply a specific legal rule that has not been

10   squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

11   (2009), quoted by Richter, 131 S. Ct. at 786.

             2.      Review of State Decisions

13        "Where there has been one reasoned state judgment rejecting a federal claim,

14   later unexplained orders upholding that judgment or rejecting the claim rest on the same

15   grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

16   "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

17   (9th Cir. 2006).    Determining whether a state court's decision resulted from an

18   unreasonable legal or factual conclusion, "does not require that there be an opinion from

19   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

20   "Where a state court's decision is unaccompanied by an explanation, the habeas

21   petitioner's burden still must be met by showing there was no reasonable basis for the

22   state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

23   not require a state court to give reasons before its decision can be deemed to have been

24   'adjudicated on the merits.'").

25        Richter instructs that whether the state court decision is reasoned and explained,

26   or merely a summary denial, the approach to evaluating unreasonableness under §

27   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

28   or theories supported or, as here, could have supported, the state court's decision; then

1    it must ask whether it is possible fairminded jurists could disagree that those arguments

2    or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

3    Thus, "even a strong case for relief does not mean the state court's contrary conclusion

4    was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves

5    authority to issue the writ in cases where there is no possibility fairminded jurists could

6    disagree that the state court's decision conflicts with this Court's precedents." Id. To put

7    it yet another way:

8        As a condition for obtaining habeas corpus relief from a federal
     court, a state prisoner must show that the state court's ruling on the claim

9    being presented in federal court was so lacking in justification that there
     was an error well understood and comprehended in existing law beyond

10   any possibility for fairminded disagreement.

11   Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

12   are the principal forum for asserting constitutional challenges to state convictions." Id. at

13   787. It follows from this consideration that § 2254(d) "complements the exhaustion

14   requirement and the doctrine of procedural bar to ensure that state proceedings are the

15   central process, not just a preliminary step for later federal habeas proceedings." Id.

16   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

17           **3.**   **Prejudicial Impact of Constitutional Error**

18       The prejudicial impact of any constitutional error is assessed by asking whether

19   the error had "a substantial and injurious effect or influence in determining the jury's

20   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

21   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

22   state court recognized the error and reviewed it for harmlessness). Some constitutional

23   errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

24   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

25   (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective

26   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

27   Strickland prejudice standard is applied and courts do not engage in a separate analysis

28   applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin

1  v. Lamarque, 555 F.3d at 834.

2  **III.**    **REVIEW OF PETITION**

3      **A.**    **Claim One: Introduction of Irrelevant and Unduly Prejudicial Evidence**

4      Petitioner contends the trial court violated his due process rights by admitting

5  irrelevant and unduly prejudicial evidence. Specifically, Petitioner alleges that the

6  presentation of approximately 35 computer images including pornographic images of

7  man-boy sex; e-mail communications discussing and transmitting the pornographic

8  images, and digital images and pictures of prepubescent boys were presented to the jury

9  in violation of his Due Process rights. (See Am. Pet., ECF No. 14-2 at 8-13.) A police

10 detective testified that he discovered pictures of homosexual sex acts, more than 500

11 pictures of heavyset boys in swim trunks and 50 to 100 images of child pornography on

12 Petitioner's computer. (Reptr's Tr. 2236-2240.) The prosecution argued in closing that

13 the pornography bolstered the testimony of the victims and went, "to show [petitioner is]

14 a pedophile that likes c[h]ubby fat boys. It only goes to him being a pedophile liking

15 chubby and fat boys." (Id. at 2873-2874, 2876-2878, 3418, 3430.)

16          2.    State Court Decision

17     Petitioner presented this claim by way of direct appeal to the California Court of

18 Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

19 appellate court and summarily denied in subsequent petition for review by the California

20 California Supreme Court. (See Lodged Docs. 4, 6.) Because the California Supreme

21 Court's opinion is summary in nature, this Court "looks through" that decision and

22 presumes it adopted the reasoning of the California Court of Appeal, the last state court

23 to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3

24 (1991) (establishing, on habeas review, "look through" presumption that higher court

25 agrees with lower court's reasoning where former affirms latter without discussion); see

26 also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts

27 look to last reasoned state court opinion in determining whether state court's rejection of

28 petitioner's claims was contrary to or an unreasonable application of federal law under

7

28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the California Court of Appeal explained:

**A. The Computer Evidence**

1. *Additional Facts*

Defendant lived with and then was married to the mother of victim K.G. The family had a desktop computer. In addition, defendant had a laptop computer. The police seized both and subjected them to examination by a forensic computer expert. The expert testified extensively concerning the content found on the computers' hard drives, and he was the vehicle for introduction into evidence of numerous images recovered from the computers.

The exhibits consisted of both pornographic and nonpornographic photographs, sexually explicit chat room conversations in which someone using defendant's screen name pretended to be a young boy, and various records of visits to websites and chat rooms that focused on sex with overweight prepubescent boys.

In response to defense counsel's in limine motions, the court restricted the number of exhibits that could be presented. The expert testified more generally that there were dozens and hundreds more of the various types of items on the computers.

Through cross-examination and affirmative evidence, defendant attempted to show that he was not the user who had caused the materials in question to appear on the hard drives.

2. *Defendant's Contentions*

Defendant constructs a multifaceted argument that the wide variety of evidence generated from the computers should not have been admitted against him. Defendant argues on three levels.

First, in various ways, he argues that evidence of his sexual interest in prepubescent boys is irrelevant, and therefore inadmissible under either Evidence Code section 1101, subdivision (b) or Evidence Code section 1108. (All further statutory references are to this code.) In one iteration of this argument, defendant's opening brief states: "Possession and distribution of child pornography[,] while evidencing a prurient sexual interest, does not, without more, equate to, or demonstrate, actual molestation or a propensity to molest." Similarly, defendant argues: "Possession of photographs of young boys and Internet chatter about sexual acts with young boys … does not equate or tend to prove appellant harbored the specific intent to commit the charged molestations." In a summary of this level of the argument, defendant states: "[W]hether appellant was or is a pedophile was irrelevant for purposes of trial. Pedophilia is not a prerequisite to commission of sexual offenses, is not an element of sexual molestation offenses, and is not a matter for jury consideration in sexual offense trials outside the confines of the Sexually Violent Predator milieu."

On a second level, defendant contends that, even if it were conceded child pornography evidence was probative of a propensity to molest children and was generally admissible under section 1108, the computer evidence "taken as a whole" was at most admissible to show intent. However, he argues, the charged acts were so clearly sexual in nature that further evidence of intent should have been excluded as prejudicially cumulative under section 352, in accordance with People v. Ewoldt (1994) 7 Cal.4th 380, 406.

On the third level, defendant argues that the amount of computer evidence constituted prejudicial "overkill" and "subjected appellant to unnecessary and unspeakable degradation." "The effect of this … downpour [of evidence] … was to render appellant so despicable that his defense, which centered on his credibility, was eviscerated. Had such evidence not been admitted, the jury would have been presented with a true credibility decision, judging the testimony of the alleged victims … against appellant and his overall reputation in the community."

3. *Discussion*

Even assuming defendant properly objected to the computer evidence as irrelevant in the sense now asserted on appeal (which does not appear to be the case), it is frivolous to contend such evidence is not relevant.

Evidence is relevant if it has any tendency in reason to prove or disprove a material fact. (§ 210.) The evidence in this case tends to show intent and motive. An example might help: had the computers contained hundreds of pornographic pictures of little girls (or of adults, for that matter), and none at all of boys, that evidence clearly would be relevant to show that defendant did not commit sex crimes with boys. By the same token, the evidence actually presented in this case showed that defendant had an unnatural, exclusive interest in overweight boys of a certain age, exactly matching the description of the victims at the time of the molestations. (See People v. Falsetta (1999) 21 Cal.4th 903, 912.) Accordingly, we reject defendant's argument that the evidence was not relevant.

Defendant's second level of argument on this point is that we should evaluate the computer evidence as a whole and that, in doing so, we should conclude the evidence was only admissible for limited purposes under section 1101, subdivision (b), and not for all purposes under section 1108. Then he argues that intent, a primary purpose for admission of such evidence, was not in issue in this case. Such an approach, however, would misconstrue the record.

The primary evidence the prosecutor sought to introduce was evidence of other sexual offenses, admissible for any purpose under section 1108. Evidence that defendant possessed and transmitted unlawful child pornography and that he sent harmful matter with intent to seduce a minor (Pen. Code, § 288.2) was admissible under section 1108 to show defendant's propensity for sex with a certain type of child that matched the victims. However, the defense hotly contested ownership of the desktop computer on which virtually all of the child pornography was found and expressly denied that defendant placed the materials on the computer. Thus, an issue in the case was whether the unlawful materials

were defendant's, that is, an issue of the identity of the user of the computer. The evidence not of sexual offenses--i.e., internet chat and browser history--was admissible under section 1101 to establish the identity of the person who placed on the computer the section 1108 materials--i.e., the internet materials constituting crime. Accordingly, defendant's approach to the evidence would have the tail wag the dog by focusing on -- and seeking to exclude -- the more collateral evidence on the basis that it sought to prove nothing relevant in the absence of the section 1108 materials. Instead, we hold that the section 1108 materials were admissible to show propensity, intent, and motive, and the remaining materials were admissible to show that defendant was the person who possessed the section 1108 materials.

Seeking refuge in section 352, defendant's final level of argument is that the sheer volume of computer evidence was prejudicial "overkill" that preempted the credibility of his denials of criminal conduct with the victims by turning defendant into a "monster." Initially, we conclude defendant waived this objection to the evidence. Defense counsel did not object to the overwhelming majority of the computer evidence, expressly stating that it might become cumulative at some point but that he had "no objection at this point." When counsel did object on the basis that further evidence would be cumulative, the trial court, in essence, sustained the objection and strictly limited the prosecution's further introduction of such evidence.

Even if we were to address the issue on its merits, we would reject defendant's claim. On defendant's motion, the court strictly limited the number of pornographic images (five) the prosecution could introduce. While the volume of nonpornographic evidence thoroughly established, as defendant says, his preoccupation with "chubby young boys," the evidence itself was not graphic or particularly shocking. In other words, it is really the result about which defendant complains -- the clear establishment of his sexual propensities regarding young boys -- and not the nature of the evidence that established that result. And defendant's sexual propensity was highly probative. The evidence in question, even considered as a whole, was not so prejudicial as to outweigh the probative value of what the evidence established.

Further, the evidence was not admitted, as defendant contends, to establish he is a "pedophile," in the clinical sense of that term. While the prosecutor used the term in argument to the jury, such use was colloquial and the evidence in question here was not introduced for the purpose, or with the effect, of injecting into the case questions of pedophilia as a mental disorder.

Finally, defendant contends the evidence was wholly "unnecessary" and "lacked any probative value" in light of the direct evidence presented though each of the child victims. He says the only purpose of the evidence was "to turn [him] into a monster -- a[n] inordinately prejudicial effect." While we doubt the computer evidence did anything more than the victim testimony to inform the jury concerning the predatory nature of defendant's crimes, the real answer to defendant's claim is given on the following page of defendant's brief: Had the computer evidence of defendant's propensity for sex with and prurient interest in young boys been excluded, "the jury would have been presented with a true credibility decision, judging the testimony of the alleged victims in conjunction with the described acts

juxtaposed against appellant and his overall reputation in the community. This state of affairs would have provided appellant the vehicle for acquittal, raising the reasonable possibility that the jury would have acquitted appellant of at least some, if not all, of the alleged acts in light of his background, his claim of innocence and the inconsistent statements by some of the victims, the delays in reporting, and the improbability [sic] that some of the acts did not occur as described …."

    To the extent defendant is correct, he clearly describes the probative value of the computer evidence. (See People v. Falsetta, supra, 21 Cal.4th at p. 911 [one reason for enactment of section 1108 was "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility"].) For the reasons we have set forth above, that evidence was not unduly prejudicial as that term is used in section 352. (See People v. Kipp (2001) 26 Cal.4th 1100, 1121.)

People v. Soria, 2009 Cal. App. Unpub. LEXIS 377 at 1-12; (Lodged Doc. 11 at 2-4.)

        3.    Analysis

    As Respondent correctly argues, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process. See Estelle v. McGuire, 502 U.S. at 75, n.5; Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001). In Estelle, the Supreme Court expressly refused to determine whether the introduction of prior crimes evidence to show propensity to commit a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); see also Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) ("Estelle expressly left this issue an 'open question'"). Because the Supreme Court has specifically declined to address whether the introduction of propensity evidence violates due process, Petitioner lacks the clearly established federal law necessary to support his claims. Id.; see also Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying on Estelle and Alberni and concluding that the introduction of propensity evidence under California Evidence Code § 1108 does not provide a basis for federal habeas relief, even where the propensity evidence relates to an uncharged crime); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

1   process violation sufficient to warrant issuance of the writ.").

2       Accordingly, the state courts' rejection of Petitioner's claim could not have been

3   "contrary to, or an unreasonable application of, clearly established" United States

4   Supreme Court authority, since no such "clearly established" Supreme Court authority

5   exists. 28 U.S.C. § 2254(d)(1).

6       Nevertheless, there can be habeas relief for the admission of prejudicial evidence

7   if the admission was fundamentally unfair and resulted in a denial of due process.

8   Estelle, 502 U.S. at 72; Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v.

9   Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993); Gordon v. Duran, 895 F.2d 610, 613 (9th

10  Cir.1990). Constitutional due process is violated if there are no permissible inferences

11  that may be drawn from the challenged evidence. Jammal v. Van de Kamp, 926 F.2d

12  918, 919-20 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise

13  more than one inference, some permissible, some not." Id. at 920. "A habeas petitioner

14  bears a heavy burden in showing a due process violation based on an evidentiary

15  decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

16      Here, the California Court of Appeal appropriately found that the evidence was

17  properly admitted to show Petitioner's propensity towards overweight young boys. Both

18  the Ninth Circuit and the California Supreme Court have found that California Evidence

19  Rule 1108 ("Rule 1108") survives due process challenges because of California

20  Evidence Rule 352 ("Rule 352"), which the Court of Appeal appropriately applied in this

21  case. See People v. Falsetta, 21 Cal. 4th 903, 917, 89 Cal. Rptr. 2d 847, 986 P.2d 182

22  (Cal. 1999) ("[T]he trial court's discretion to exclude propensity evidence under section

23  352 saves section 1108 from defendant's due process challenge.").

24      The Court of Appeal sufficiently protected Petitioner's due process rights by

25  finding that the Superior Court had not abused its discretion in applying Rule 352 to

26  admit the computer evidence as propensity evidence under Rule 1108. The Court of

27  Appeal found the evidence to have a high probative value, which outweighed the danger

28  of prejudice. People v. Soria, 2009 Cal. App. Unpub. LEXIS 377, at 9-10 (applying Cal.

1 Evid. Code § 352). The Court of Appeal found the computer records probative because

2 the evidence proved "the clear establishment of his sexual propensities regarding young

3 boys" Id. at 10. The Court of Appeal then balanced this probative value against the

4 prejudicial nature of the evidence. The Court of Appeal noted that the trial court limited

5 the number of pornographic images to five, however, allowed the prosecution to discuss

6 the large volume of nonpornographic pictures of "chubby young boys." The Court of

7 Appeals also noted that Petitioner did not challenge the evidence admitted as being

8 cumulative, and when Petitioner did object, the trial court sustained the objection and

9 limited further evidence.   Accordingly, the Court of Appeals concluded that "[f]or the

10 reasons we have set forth above, that evidence was not unduly prejudicial as that term is

11 used in section 352." Id. at 12.

12       This Court must defer to the Court of Appeal's conclusions with regard to

13 California Law, Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000) (citing Wainwright v.

14 Goode, 464 U.S. 78, 84 (1983)). The Court finds that this analysis adequately addressed

15 the permissible inferences of the images and content found on Petitioner's computers,

16 and the fundamental fairness of its introduction. The California Court of Appeal decision

17 denying this claim was not contrary to clearly established Supreme Court precedent.

18 Accordingly, Petitioner is not entitled to habeas relief.

19       **B.**    **Claim Two: Instructional Error: Failure to Provide Jury Instruction**

20       Petitioner claims that the "assuming the computer evidence was properly

21 admitted, the trial court erred in failing to instruct the jury on the evaluation and use of

22 the uncharged conduct." (Am. Pet., ECF No. 14-2 at 13.) Alternatively, Petitioner argues

23 that counsel was ineffective for failing to request a limiting instruction. (Id.)

24       1.    State Decision

25     In the last reasoned decision denying Petitioner's claim, the appellate court

26 explained:

27      **B. Instructional Error**

28         Defendant contends the "extraordinary" circumstances of this case

required the court, on its own motion, to instruct the jury with Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 1191 (evidence of uncharged sex offense), concerning the jury's evaluation and use of evidence admitted for a limited purpose. Defendant recognizes that it is settled law that the court has no duty to instruct in this regard unless the defendant requests such an instruction. (See People v. Smith (2007) 40 Cal.4th 483, 516.) However, defendant relies on dicta in this court's decision in People v. Willoughby (1985) 164 Cal.App.3d 1054, 1067 (Willoughby), to contend that the court was required to instruct with CALCRIM No. 1191. He also contends trial counsel was constitutionally ineffective in failing to request the instruction.

Willoughby has limited applicability after the enactment of section 1108 and the record suggests a clear tactical decision by counsel not to request the instruction.

Willoughby was decided in 1985. At that time, section 1101, subdivision (b) limited the admissibility of uncharged acts: such evidence was (and still is, except in sex crime prosecutions) admissible only for the limited purpose of proving a fact in issue, such as intent or identity, other than the defendant's "disposition to commit such an act." Under those circumstances, and recognizing "the law's sensitivity to the admission of prior offenses in sex cases," this court stated that an instruction informing the jury of the limited purpose for the prior-act evidence was required where "evidence of past offenses play[s] such a dominant part in the case … that it would be highly prejudicial without a limiting instruction." (Willoughby, supra, 164 Cal.App.3d at p. 1067.)

Under section 1108, enacted in 1995, of course, evidence of uncharged sex crimes is admissible without the limitations contained in section 1101, subdivision (b) and, in particular, is admissible to prove a defendant's disposition to commit sex crimes. (People v. Falsetta, supra, 21 Cal.4th at p. 912.) Accordingly, Willoughby's concern that the jury would misuse evidence of uncharged crimes is no longer applicable when the evidence is admitted under section 1108. The court was not required to instruct with CALCRIM No. 1191 in the present case.

Unlike the limiting instruction contemplated in Willoughby, CALCRIM No. 1191 tells the jury specifically that it can conclude from the uncharged-acts evidence "that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit [and did commit] [the offenses] charged here." (First bracketed material included in original; second bracketed material added.) It is clear that defense counsel did not want this point emphasized to the jury. His approach to the computer evidence was to denigrate the evidence as a whole on the basis it was more likely that defendant's teen-aged stepson was responsible for everything on the computer and thereby minimize the importance of the computer evidence. It is reasonable to conclude counsel did not want an instruction that emphasized the importance of this evidence. Defendant has not established such a tactical decision would have been unreasonable and that, as a consequence, counsel was constitutionally ineffective in failing to request a limiting instruction. (See Strickland v. Washington (1984) 466 U.S. 668, 690.)

People v. Soria, 2009 Cal. App. Unpub. LEXIS 377 at 10-15.

2.    General Principles Regarding Trial Error In Instructing Jurors

This Court's review of Petitioner's claim of state instructional error is "limited to deciding whether [his] conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241. In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must first conclude that the alleged error was of constitutional magnitude. See California v. Roy, 519 U.S. 2 (1996).

In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must conclude that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Roy, 519 U.S. at 5; Brecht, 507 U.S. at 637. Federal habeas relief is warranted only if the Court, after reviewing the record, has "grave doubt" as to the error's effect. Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). The trial court's error in omitting a jury instruction is less likely to be prejudicial than the trial court's misstatement of the law. Henderson, 431 U.S. at 155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (habeas petitioner whose claim involves a failure to give a particular instruction bears an especially heavy burden).

To evaluate the effect of jury instructions, the Court must look at the context of the entire trial and overall charge to the jury. Estelle, 502 U.S. at 72; Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988). They may not be judged in artificial isolation. Estelle, 502 U.S. at 72. In addition, a reviewing court's principal constitutional inquiry is whether there is a reasonable likelihood that the jury applied the challenged instructions in a way that violates the Constitution. See id.

While a state is generally free to define the elements of an offense, once the state has defined the elements, due process requires that the jury be instructed on each

1    element and instructed that they must find each element beyond a reasonable doubt.

2    Francis v. Franklin, 471 U.S. 307, 313 (1985); In re Winship, 397 U.S. 358, 364 (1970);

3    United States v. Perez, 116 F.3d 840, 847 (9th Cir. 1997); Stanton, 146 F.3d at 728. Due

4    process requires that the jury be instructed on each element of the offense. Keating v.

5    Hood, 191 F.3d 1053, 1061 (9th Cir. 1991); Stanton, 146 F.3d at 728 (9th Cir. 1998).

6         It necessarily follows, therefore, that constitutional trial error occurs when a jury

7    makes a guilty determination on a charged offense without a finding as to each element

8    of the offense. According to the Supreme Court, a jury instruction that omits an element

9    of the offense constitutes such an error. Neder v. United States, 527 U.S. 1, 8 (1999).

10   However, such an error "does not necessarily render a criminal trial fundamentally unfair

11   or an unreliable vehicle for determining guilt or innocence." Id. at 9. Provided that such

12   an error occurred, Petitioner's conviction can only be set aside if the error was not

13   harmless under Chapman v. California, 386 U.S. 18 (1967); Neder, 527 U.S. at 15.

14   Under the Chapman harmless error test, it must be determined "beyond a reasonable

15   doubt" whether "the error complained of did not contribute to the verdict obtained."

16   Chapman, 386 U.S. at 24.

17         3.    Analysis

18        Here, Petitioner contends the trial court erred in failing to instruct the jury on the

19   evaluation and use of the uncharged conduct. Specifically, Petitioner contends that the

20   Court should have provided the jury with the instruction contained in CALCRIM No.

21   1191. (See Am. Pet., ECF No. 14-2 at 14-15.) CALCRIM No. 1191 instructs the jury that

22   it may only consider uncharged crimes if the prosecution proves by a preponderance of

23   the evidence that the uncharged crimes were committed. If the jury decides that the

24   uncharged crimes were committed, CALCRIM No. 1191 provides the following limiting

25   instruction:

26        If you decide that the defendant committed the uncharged offenses, you
          may, but are not required to, conclude from that evidence that the
27        defendant was disposed or inclined to commit sexual offenses, and based
          on that decision, also conclude that the defendant was likely to commit
28        and did commit [the charged crimes], as charged here. If you conclude

1
2
3

that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of [the charged crimes]. The People must still prove each element of the charge beyond a reasonable doubt. [Do not consider this evidence for any other purpose [except for the limited purpose of _, ?].]"

CALCRIM No. 1191. Petitioner contends, that without the instruction, the jury could use the evidence to support a finding that Petitioner had a propensity to commit the charged crimes, even though some of the alleged misconduct may not have been criminal, and that the jurors were not instructed as to what limited purpose the evidence could be used for.

Here, the state court found that the instruction was not necessary, as the evidence was admissible to show the propensity of Petitioner to  commit  such  acts. Looking at the context of the trial as a whole, including the other instructions given to the jury, it cannot be said that the state court's determination that the lack of instruction did not render Petitioner's trial fundamentally unfair or violate his due process rights was an unreasonable determination of Supreme Court law. See 28 U.S.C. § 2254(d); Estelle, 502 U.S. at 71-72.

The jury was given instructions regarding the appropriate standards of reasonable doubt and the presumption of innocence. See Clerk's Tr. at 283-84, 300-01; CALCRIM Nos. 103, 220. Further, the trial court provided instructions that set forth the required elements of the crimes for which Petitioner was charged. See Clerk's Tr. at 333-41; CALCRIM Nos. 1110, 1120, 1122.  Furthermore, the trial court instructed the jury with an analogous instruction to CALCRIM No. 1191 regarding uncharged offenses of child molestation. See Clerk's Tr. at 324-26; CALCRIM No. 375. That instruction stated that the uncharged crimes could only be considered if there was a preponderance of the evidence that they were committed, and then only as applied to Petitioner's intent, plan, or similar conduct, and not for Petitioner's bad character. Id. The instruction also confirmed that the criminal acts had to be proven beyond a reasonable doubt. Id.

While the trial court did not provide the jury with a similar instruction as to the computer evidence, Petitioner has not provided any evidence that the jury failed to follow

17

1    the instructions given and used the computer evidence as a basis for Petitioner's bad

2    character or to otherwise supplant elements of, or lower the burden required to support,

3    the charged offenses.

4         Consequently, the Court finds that the failure to supply the jury instructions at

5    issue did not render Petitioner's trial fundamentally unfair or violate his due process

6    rights. Accordingly, the Court cannot find the Court of Appeal's rejection of Petitioner's

7    claim to be unreasonable. See 28 U.S.C. § 2254(d). Petitioner is thus not entitled to

8    federal habeas relief on his instructional error claim.

9                 4.    Ineffective Assistance of Counsel

10        In the alternative, Petitioner argues that counsel was ineffective for failing to

11    request a limiting instruction.

12              a.     Law Applicable to Ineffective Assistance of Counsel Claims

13        The law governing ineffective assistance of counsel claims is clearly established

14    for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

15    Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas

16    corpus alleging ineffective assistance of counsel, the Court must consider two factors.

17    Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

18    v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

19    performance was deficient, requiring a showing that counsel made errors so serious that

20    he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

21    Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell

22    below an objective standard of reasonableness, and must identify counsel's alleged acts

23    or omissions that were not the result of reasonable professional judgment considering

24    the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

25    (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

26    indulges a strong presumption that counsel's conduct falls within the wide range of

27    reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v.

28    Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of

1  clearly established Federal law for a state court to decline to apply a
2  specific legal rule that has not been squarely established by this Court."
   Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
   2d 251, 261 (2009) (internal quotation marks omitted).

3  Harrington v. Richter, 131 S. Ct. at 785-86.

4  "It bears repeating that even a strong case for relief does not mean the state

5  court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

6  2254(d) stops short of imposing a complete bar on federal court relitigation of claims

7  already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

8  from a federal court, a state prisoner must show that the state court's ruling on the claim

9  being presented in federal court was so lacking in justification that there was an error

10  well understood and comprehended in existing law beyond any possibility for fairminded

11  disagreement." Id. at 786-87.

12  Accordingly, even if Petitioner presents a strong case of ineffective assistance of

13  counsel, this Court may only grant relief if no fairminded jurist could agree on the

14  correctness of the state court decision.

15  b.    Analysis

16  With regard to this claim, the state court held:

17  [Counsel's] approach to the computer evidence was to denigrate the
   evidence as a whole on the basis it was more likely that defendant's teen-
18  aged stepson was responsible for everything on the computer and thereby
   minimize the importance of the computer evidence. It is reasonable to
19  conclude counsel did not want an instruction that emphasized the
   importance of this evidence. Defendant has not established such a tactical
20  decision would have been unreasonable and that, as a consequence,
   counsel was constitutionally ineffective in failing to request a limiting
21  instruction. (See Strickland v. Washington (1984) 466 U.S. 668, 690.)

22  People v. Soria, 2009 Cal. App. Unpub. LEXIS 377 at 15.

23  Here, providing the state court decision with appropriate deference, fair-minded

24  jurists could disagree whether counsel fell below an objective standard of

25  reasonableness, or, alternatively, that Petitioner was prejudiced by counsel's conduct.

26  Fairminded jurists could disagree on whether counsel's strategy of attempting to show

27  that Petitioner was not the one who placed the images on the computer, and that the

28  instruction would only further emphasize the conduct in question was reasonable.

Counsel did object to the cumulative nature of the testimony, and the trial court, upon such objection limited the amount of evidence allowed. Accordingly, the Court cannot find that counsel fell below an objective level of performance. Petitioner is not entitled to habeas corpus relief.

### C. Claim Three: Cross-Examination on Collateral Misconduct

Petitioner contends that his due process rights were violated by allowing the prosecution to cross-examine him with regard to uncharged misconduct regarding alleged touching of another boy in 2001. (Am. Pet., ECF No. 14-2 at 17-19.)

### 1. State Decision

In the last reasoned decision denying Petitioner's claim, the appellate court explained:

**C. Cross-Examination**

Defendant testified on his own behalf. His attorney asked him the following question: "I think we covered all the alleged victims. Is there any one ever, ever, other than Barbara P, that's accused you of anything, other than about nine years later [J.P.] coming forward, a year and-a-half [sic] or so [K.G.] coming forward, [N.E.] about a year and-a-half coming forward, and [E.W.] 13 to 15 years -- other than that, had anybody ever accused you of molestation touching or anything?" Defendant answered, "No sir." In response to further questioning, defendant reiterated that he hugged boys when he was around them and that he patted them on the buttocks as "kind of a sports thing, you know, way to go." Defendant then reiterated his denial of any improper touching of the victims; he stated twice that his testimony was the truth.

As it happens, defendant was in fact accused of improperly touching another boy, R.W., in 2001. On appeal, defendant contends the court prejudicially erred in allowing the prosecutor to cross-examine defendant about this earlier accusation. Totally misrepresenting the nature of the cross-examination and his answers to the prosecutor's questions, defendant contends that once he admitted "he had been investigated," impeachment of his credibility was complete and any further questioning concerning the specifics of the incident resulted in irrelevant, unduly prejudicial, and "highly suggestive" evidence.

When the prosecutor began questioning on the 2001 incident, defense counsel objected and there was a lengthy sidebar conference. The trial court made clear that the issue on cross-examination was the credibility of defendant's denial that he had ever previously been accused of other improper touching. The court ruled that if defendant admitted he had been accused in relation to the 2001 incident, further evidence regarding the incident would not be permitted.

Despite defendant's contention that he "admitted he had been investigated," the record tells a different story:

"Q [Prosecutor]: Isn't it true you were accused of inappropriate contact with a boy in a pool in 2001?

"A: I was not aware that I was ever accused. If I can elaborate, I was inquired made [sic] as to a situation in the pool, just crazy behavior, splashing, throwing each other, and that's what I was inquired about [sic].

"Q: And were you inquired [sic] by detective from the Fresno Police Department?

"A: I was called, yes."

All of the remaining cross-examination, the subject of defendant's contention on appeal, consisted of further questioning, using the police report to refresh defendant's recollection, to try to get to the truth of defendant's continued denial that he was accused of inappropriate touching. Defendant eventually acknowledged the telephone call had summoned him to the police department, where he was interviewed for 20 to 30 minutes. During the interview, he acknowledged that, as had been reported to the police, he had caused R.W., an overweight 13-year-old boy, to sit on his lap in the pool and had caused him to move around on his lap in a manner that a witness could construe as sexual activity.

This process required an examination that fills 17 pages of reporter's transcript. This process involved repeated denials by defendant that he remembered anything about the pool incident and the police interview, followed by repeated references to a police report, followed by repeated acknowledgment (sometimes in rather equivocal terms) that someone may have seen something that was possibly like what was discussed in the police report. Ultimately, defendant continued to minimize the incident as typical father-son type interaction and asserted that R.W.'s father had concluded the whole business was just a "misunderstanding."

Accordingly, we reject the factual premise of defendant's argument on appeal: on cross-examination, defendant first denied and never unequivocally admitted he had been investigated for inappropriate touching of R.W. Because defendant's argument is based entirely on this erroneous factual premise, we reject his contentions. The prosecutor was entitled to cross-examine defendant to impeach his credibility based on defendant's statements in the police report.

People v. Soria, 2009 Cal. App. Unpub. LEXIS 377 at 15-18.

2.    Analysis

Petitioner, in his amended petition, does not provide any federal authority for the due process violation and concludes that the evidence, as admitted, was prejudicial. In his reply, Petitioner contends that the admission of the evidence rendered the trial fundamentally unfair due to its prejudicial nature. See Johnson v. Sublett, 63 F.3d 926,

930 (9th Cir. 1995) (citing Estelle, 502 U.S. 62.). Despite Petitioner's contentions, there is no clearly established Supreme Court law that evidence of prior uncharged sexual misconduct, or in this case alleged misconduct, violated Petitioner's due process rights. See Mejia v. Garcia, 534 F.3d at 1046-47. Petitioner is not entitled to relief with regard to this claim.

### D.   Claim Four: Admission of Rebuttal Witnesses

Petitioner contends that his due process rights were violated by the court allowing rebuttal witnesses to testify regarding the 2001 incident. (Am. Pet., ECF No. 14-2 at 19-20.)

### 1.   State Decision

In the last reasoned decision denying Petitioner's claim, the appellate court explained:

**D. Rebuttal Evidence**

Over defense objection, the prosecutor was permitted to present testimony from the witness, Gonzalez, who complained to the police about the incident with R.W. In addition, the prosecutor was permitted to present testimony from R.W.'s father, to the effect that he restricted his son's interaction with defendant after the 2001 pool incident. On appeal, defendant contends this rebuttal testimony was inadmissible and prejudicial. It was neither.

Defendant presented character evidence to the effect that he was an outgoing, physical person, who hugged, patted, and engaged in horseplay with young boys, but that he never, ever, inappropriately touched any boy. In addition to denying he was ever accused of inappropriate touching in the pool incident, he continued to characterize that touching as innocent horseplay. He testified the interaction was normal father-son play and the investigation was an invasion of his privacy.

Gonzalez testified that she saw R.W. sit on defendant's lap in the swimming pool and move forward and back on his lap. She overheard a suggestive conversation between the two. This testimony was relevant to defendant's claims that his physical interactions with young boys were innocent and merely reflective of his outgoing personality. He had described the pool incident as just another example of these innocent interactions. Gonzalez's testimony was relevant to establish that defendant's interactions were not innocent, as well as to impeach defendant's credibility. (See People v. Jones (2003) 30 Cal.4th 1084, 1121.) The testimony was short, relevant, and factual; it was not unduly prejudicial or time consuming. It was not error to permit the testimony of this witness.

Defendant also testified R.W.'s father had concluded, after discussing the matter with defendant, that the matter was just a "misunderstanding." The prosecutor called the father as a rebuttal witness. He testified that he decided not to pursue the matter of the pool incident based on the limited information he had at that time. He said he had not read the police report at the time that he decided merely to restrict defendant's access to R.W. This testimony was relevant to impeach defendant's testimony which, in net effect, asserted that the father agreed with defendant that the pool incident was merely horseplay, not child molestation. Again, the testimony was brief and factual; it was not unduly prejudicial or time consuming. The court did not err in permitting this testimony.

People v. Soria, 2009 Cal. App. Unpub. LEXIS 377 at 18-20.

2.     Analysis[1]

Petitioner, in his amended petition does not provide any federal authority for the due process violation, and concludes that the trial court erred in its application of state law by allowing the witnesses to testify. In his reply, petitioner contends that the admission of the evidence rendered the trial fundamentally unfair due to its prejudicial nature. See Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (citing Estelle, 502 U.S. 62.). Despite Petitioner's contentions, there is no clearly established Supreme Court law that the testimony of the rebuttal witnesses violated Petitioner's due process rights.  See Mejia v. Garcia, 534 F.3d at 1046-47; Holley v. Yarborough, 568 F.3d at 1101. Petitioner is not entitled to relief with regard to this claim.

**E.     Claim Five: Cumulative Error**

In his final claim for relief, petitioner argues that the cumulative effect of the errors at his trial violated his right to due process and a fair trial. (Am. Pet., ECF No. 14-2 at 20-21.) Here, the claim was presented to the California Court of Appeals, however, the court in denying the appeal, did not discuss the cumulative error claim. (See Lodged Doc. 1 at 76.) "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784-85.

---

[1] Respondent, in his answer asserts that claims four and five are untimely, or in the alternative, without merit. In light of judicial efficiency, the Court finds it appropriate to address and resolve the claims on the merits.

1    The Ninth Circuit has concluded that under clearly established United States

2  Supreme Court precedent, the combined effect of multiple trial errors may give rise to a

3  due process violation if it renders a trial fundamentally unfair, even where each error

4  considered individually would not require reversal. <u>Parle v. Runnels</u>, 505 F.3d 922, 927

5  (9th. Cir. 2007) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974) and

6  <u>Chambers v. Mississippi</u>, 410 U.S. 284, 290 (1973)). <u>See also</u> <u>Hayes v. Ayers</u>, 632 F.3d

7  500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial, "no

8  cumulative prejudice is possible"). "The fundamental question in determining whether the

9  combined effect of trial errors violated a defendant's due process rights is whether the

10  errors rendered the criminal defense 'far less persuasive,' <u>Chambers</u>, 410 U.S. at 294,

11  and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."

12  <u>Parle</u>, 505 F.3d at 927 (quoting <u>Brecht</u>, 507 U.S. at 637).

13    This Court has addressed each of Petitioner's claims raised in the instant petition

14  and has concluded that no error of constitutional magnitude occurred at his trial in state

15  court. This Court also concludes that the errors alleged by Petitioner, even when

16  considered together, did not render his defense "far less persuasive," nor did they have

17  a "substantial and injurious effect or influence on the jury's verdict." Accordingly,

18  Petitioner is not entitled to relief on his claim of cumulative error.

19  **IV.    <u>RECOMMENDATION</u>**

20    Accordingly, it is hereby recommended that the petition for a writ of habeas

21  corpus be DENIED with prejudice.

22    This Findings and Recommendation is submitted to the assigned District Judge,

23  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

24  being served with the Findings and Recommendation, any party may file written

25  objections with the Court and serve a copy on all parties. Such a document should be

26  captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

27  to the objections shall be served and filed within fourteen (14) days after service of the

28  objections. The parties are advised that failure to file objections within the specified time

may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153
(9th Cir. 1991).

IT IS SO ORDERED.

Dated:   July 12, 2013                        /s/ *Michael J. Seng*
                                           UNITED STATES MAGISTRATE JUDGE